WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| John Schmidt,<br><br>                    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security,<br><br>                    Defendant. | No. CV-15-08139-PCT-NVW<br><br>**ORDER** |

Plaintiff John Schmidt seeks review under 42 U.S.C. § 405(g) of the final decision of the Commissioner of Social Security ("the Commissioner"), which denied him supplemental security income under section 1614(a)(3)(A) of the Social Security Act. Because the decision of the Administrative Law Judge ("ALJ") is supported by substantial evidence and is not based on legal error, the Commissioner's decision will be affirmed.

**I.     BACKGROUND**

Plaintiff was born in February 1972 and was 39 years old on the date his application was filed. Plaintiff has a limited education, is able to communicate in English, and has no past relevant work. In December 2013, Plaintiff lived with his wife, 15-year-old stepson, and 2-year-old grandson. He is able to drive, perform personal care, and watch television. He uses a cane sometimes, but it has not been prescribed.

Plaintiff applied for supplemental security income disability benefits in 1990, 1993, 1994, and 1998. He received benefits for approximately ten years due to lower back problems. During that time, Plaintiff received fusion surgery at the L4/L5 and L5/S1 levels. Plaintiff's receipt of benefits ceased due to incarceration between 2006 and 2009. Plaintiff applied for benefits on June 17, 2009, alleging back and leg pain, and received an unfavorable decision on April 11, 2011. Plaintiff's request for review of that decision was denied by the Appeals Council on April 19, 2012.

On July 27, 2011, Plaintiff applied for supplemental security income, alleging disability beginning April 12, 2011, due to back and leg problems. On December 19, 2013, he appeared with his attorney and testified at a video hearing before the ALJ. Plaintiff's attorney argued that Plaintiff's back impairment had worsened since the April 11, 2011 denial of benefits and that it meets or equals Listing 1.04A. Plaintiff testified that he had back surgery in 2003 and in August 2013 he had surgery to correct a deviated nasal septum. He also testified that about twice a week he cares for his 2-year-old grandson while his wife is at work. He reported pain and numbness in his back, feet, legs, right hip, neck, head, hands, and between his shoulders.

On February 28, 2014, the ALJ issued a decision that Plaintiff was not disabled within the meaning of the Social Security Act. The Appeals Council denied Plaintiff's request for review of the hearing decision, making the ALJ's decision the Commissioner's final decision. On August 4, 2015, Plaintiff sought review by this Court.

## II.   STANDARD OF REVIEW

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, less than a preponderance, and relevant evidence that a reasonable person might accept as adequate

to support a conclusion considering the record as a whole. *Id.* In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id.* Generally, when the evidence is susceptible to more than one rational interpretation, courts must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012). "Overall, the standard of review is highly deferential." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1002 (9th Cir. 2015).

Harmless error principles apply in the Social Security Act context. *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012). An error is harmless if there remains substantial evidence supporting the ALJ's decision and the error does not affect the ultimate nondisability determination. *Id.* The claimant usually bears the burden of showing that an error is harmful. *Id.* at 1111.

## III. FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 416.920(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). If so, the claimant is not disabled and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a severe medically determinable physical or mental impairment. § 416.920(c). If not, the claimant is not disabled and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404. If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. At step four, the ALJ assesses the claimant's residual functional capacity and determines

whether the claimant is still capable of performing past relevant work. § 416.920(e), (f). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. § 416.920(g). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since July 27, 2011, the application date. At step two, the ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine; status post lumbar spine infusion; history of small spinal canal; and obstructive sleep apnea. At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

At step four, the ALJ found that Plaintiff:

> has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes or scaffolds and he can never crawl. He can occasionally climb ramps and stairs and occasionally stoop, kneel and crouch. He can frequently balance. He should avoid concentrated exposure to extreme cold, wetness, vibration and hazards including unprotected heights and moving machinery.

The ALJ further found that Plaintiff has no past relevant work. At step five, the ALJ concluded that, considering Plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform.

## IV. ANALYSIS

### A. The ALJ Did Not Err in Weighing NP Brown's Opinion.

In determining whether a claimant is disabled, the ALJ considers all evidence in the claimant's case record. 20 C.F.R. § 416.920(a)(3). However, a claimant must submit evidence from an acceptable medical source to establish that he has a medically

- 4 -

determinable impairment or impairments. 20 C.F.R. § 416.913(a). Only licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists are considered "acceptable medical sources." *Id.* A nurse practitioner is not an acceptable medical source. Only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03P, 2006 WL 2329939, at *2.

"Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Because a nurse practitioner is not an acceptable medical source, a statement by a nurse practitioner is not a "medical opinion." "The fact that a medical opinion is from an 'acceptable medical source' is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an 'acceptable medical source.'" SSR 06-03P, 2006 WL 2329939, at *5.

However, "evaluation of an opinion from a medical source who is not an 'acceptable medical source' depends on the particular facts in each case." *Id.* Information from "other sources" "may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 WL 2329939, at *2. The ALJ may consider evidence from "other sources," including nurse practitioners, regarding the severity of a claimant's impairment and how it affects the claimant's ability to work. 20 C.F.R. § 416.913(d). The ALJ may discount testimony from "other sources" if the ALJ gives reasons germane to the witness for doing so. *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Dale v. Colvin*, __ F.3d __, 2016 WL 2909237, at *2 (9th Cir. May 19, 2016).

Plaintiff contends the ALJ erred in giving Certified Family Nurse Practitioner Cindy Brown's opinion little weight based on finding (1) the opinion was inconsistent with the greater objective medical record and Plaintiff's reported activity levels; (2) the assessment of the effect of Plaintiff's pain on his ability to concentrate was excessive and contradicted by progress notes; and (3) NP Brown is not an acceptable medical source. Because NP Brown is a nurse practitioner and not an acceptable medical source, the ALJ was required to consider her opinion as evidence regarding the severity of Plaintiff's impairments and how they affect Plaintiff's ability to work, but was not required to weigh her opinion as though she were a treating medical source. The ALJ was required only to provide reasons germane to NP Brown for discounting her opinion.

Although the ALJ gave NP Brown's opinion "little weight," much of the ALJ's residual functional capacity assessment is fairly consistent with NP Brown's opinion. NP Brown opined that a medically required hand-held assistive device was not necessary for ambulation. She opined that Plaintiff can never climb; the ALJ concluded that Plaintiff can never climb ladders, ropes, or scaffolds, but occasionally climb ramps and stairs. NP Brown opined that Plaintiff can never stoop, kneel, or crouch; the ALJ limited Plaintiff to occasional stooping, kneeling, and crouching. NP Brown opined that Plaintiff can never crawl; the ALJ concluded the same. NP Brown opined that Plaintiff can frequently balance; the ALJ concluded the same. NP Brown opined, and the ALJ agreed, that Plaintiff should avoid unprotected heights and extreme cold. The ALJ also restricted Plaintiff from moving machinery, which NP Brown did not.

The ALJ found that Plaintiff is capable of performing light work as defined in 20 C.F.R. § 416.967, which involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. NP Brown opined that Plaintiff could lift and carry less than 10 pounds, sit for a total of 2 hours in an 8-hour work day, and stand and/or walk for a total of less than 2 hours in an 8-hour work day. The ALJ gave greater weight to the opinion of Dr. Bradley Werrell, the State agency examining

- 6 -

physician, who opined that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, stand and/or walk 4 hours in an 8-hour work day, and sit without limitation, because Dr. Werrell's examination was objective in nature and his opinion was more consistent with the greater record. The ALJ also gave greater weight to the opinions of the State agency reviewing physicians, who opined that Plaintiff could perform light work with some limitations, because the opinions were not inconsistent with the greater objective record.

The ALJ specifically identified Plaintiff's reported activities that were inconsistent with NP Brown's opinion that Plaintiff can sit, stand, and/or walk for a total of less than 4 hours in an 8-hour work day and can never carry more than 10 pounds. The reported activities included being responsible for and caring for his 2-year-old grandson, driving his own vehicle, maintaining personal care independently, making meals for himself and his grandson, watching television, and performing stretching exercises.

Further, the ALJ specifically identified NP Brown's December 17, 2012 treatment note as inconsistent with her opinion that Plaintiff has severe pain that precludes his ability to function and constantly interferes with his attention and concentration. The treatment note stated that Plaintiff's judgment and insight was intact, his memory for recent and remote events was intact, and his mood and affect did not indicate depression, anxiety, or agitation.

Therefore, the ALJ did not err by discounting NP Brown's opinion.

### B.     The ALJ Did Not Err in His Severity Finding.

At step two of the five-step sequential analysis, the ALJ was required to determine whether Plaintiff has a medically determinable impairment or combination of impairments that is severe, *i.e.*, it significantly limits physical or mental ability to do basic work activities and is expected to last for a continuous period of at least twelve months. 20 C.F.R. §§ 416.920(c), 416.921(a), 416.909. "Basic work activities" refers to abilities and aptitudes necessary to do most jobs, such as walking, standing, sitting,

lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding and carrying out simple instructions, use of judgment, responding appropriately to others, and dealing with changes in a routine work setting. 20 C.F.R. § 416.921(b). In determining a claimant's residual functional capacity, the ALJ must consider the combined effect of multiple conditions, including those that are not severe. *See* 20 C.F.R. § 416.945(a)(2).

The ALJ found that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar, cervical, and thoracic spine; status post lumbar spine infusion; history of small spinal canal; and obstructive sleep apnea. The ALJ expressly found the following impairments not to be severe because they result in no more than minimal functional restrictions in basic work activities: gastroesophageal reflux disease/acid reflux; chronic obstructive pulmonary disease with tobacco dependence; chronic sinusitis; deviated nasal septum, status post 2013 corrective surgery; bilateral shoulder osteoarthritis; and obesity (height 6 feet, weight 215 pounds). The ALJ also concluded that Plaintiff's "medically determinable mental impairments of methamphetamine dependence, in remission, alcohol abuse, in remission, and cannabis dependence— without medical recommendation to use/medical marijuana card, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere."

In his opening brief, Plaintiff contends that the ALJ committed legal error by finding Plaintiff's chronic obstructive pulmonary disease, sinusitis, deviated nasal septum, and shoulder osteoarthritis to be non-severe. However, Plaintiff does not argue that his chronic obstructive pulmonary disease, sinusitis, and/or deviated nasal septum significantly limit his physical or mental ability to do basic work activities. In his reply brief, Plaintiff does not respond to Defendant's contention regarding these impairments and addresses only whether his shoulder osteoarthritis should have been found to be severe.

The ALJ based his conclusion that Plaintiff's bilateral shoulder osteoarthritis was non-severe on NP Brown's most recent physical examination notes. On December 5, 2013, NP Brown observed that Plaintiff had normal range of motion and strength in the upper extremities with no joint enlargement or tenderness bilaterally. Plaintiff contends the ALJ should have considered NP Brown's November 25, 2013 opinion that the shoulder osteoarthritis would pose significant functional limitations instead of relying on her December 5, 2013 examination findings. The ALJ's proper discounting of NP Brown's November 25, 2013 *opinion* does not require the ALJ to disregard her examination findings. Moreover, NP Brown's observations on December 5, 2013, indicate that if Plaintiff had significant functional limitations due to shoulder osteoarthritis on November 25, 2013, they did not last for a continuous period of at least twelve months. Further, the ALJ was not required to adopt Dr. Werrell's opinion that Plaintiff be restricted to occasional reaching based only on his physical examination without reviewing any medical records showing shoulder osteoarthritis.

Therefore, the ALJ did not err in finding only Plaintiff's degenerative disc disease of the lumbar, cervical, and thoracic spine; status post lumbar spine infusion; history of small spinal canal; and obstructive sleep apnea to be severe impairments.

### C. The ALJ Provided Clear and Convincing Reasons for Discrediting Plaintiff's Symptom Testimony.

If a claimant's statements about pain or other symptoms are not substantiated by objective medical evidence, the ALJ must consider all of the evidence in the case record, including any statement by the claimant and other persons, concerning the claimant's symptoms. SSR96-7p. Then the ALJ must make a finding on the credibility of the claimant's statements about symptoms and their functional effects. *Id.*

In evaluating the credibility of a claimant's testimony regarding subjective pain or other symptoms, the ALJ is required to engage in a two-step analysis: (1) determine whether the claimant presented objective medical evidence of an impairment that could

reasonably be expected to produce some degree of the pain or other symptoms alleged; and, if so with no evidence of malingering, (2) reject the claimant's testimony about the severity of the symptoms only by giving specific, clear, and convincing reasons for the rejection. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "This is not an easy requirement to meet: 'The clear and convincing standard is the most demanding required in Social Security cases.'" *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

To ensure meaningful review, the ALJ must specifically identify the testimony from a claimant the ALJ finds not to be credible and explain what evidence undermines the testimony. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "General findings are insufficient." *Id.* The ALJ must make findings "sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002); *accord Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).

In making a credibility determination, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the claimant's allegations." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). But "an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors." *Id.* Further, the claimant is not required to produce objective medical evidence of the symptom or its severity. *Garrison*, 759 F.3d at 1014. The ALJ must consider all of the evidence presented, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; factors that precipitate and aggravate the symptoms; effectiveness and side effects of any medication taken to alleviate pain or other symptoms; treatment other than medication; any measures other than treatment the claimant uses to relieve pain or other symptoms; and any other

factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. SSR 96-7p.

First, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." Second, the ALJ found Plaintiff's "statements regarding the intensity, persistence, and limiting effects of the symptoms not entirely credible to the extent they are inconsistent with the residual functional capacity assessment."

The ALJ stated that Plaintiff testified he cannot work due to back pain, and he experiences a burning, tingling, and sharp pain in his right hip when he lies down. He said Plaintiff also complained of neck pain, severe headaches, dizziness, numbness and pressure in his head, numbness in his shoulders, and finger and hand numbness. The ALJ further noted that Plaintiff testified that he has difficulty standing to shave and sometimes needs to lie down during episodes of heightened back pain for up to 2½ hours.

The ALJ found Plaintiff's allegations regarding the severity and limitations associated with his impairments to be unsupported by the medical evidence and inconsistent with his activity levels, including being responsible for and caring for his 2-year-old grandson, driving his own vehicle, maintaining personal care independently, making meals for himself and his grandson, watching television, and performing stretching exercises. The ALJ noted that Plaintiff had reported his pain medications were working well to control his pain, he drove himself to Dr. Werrell's evaluation, and he appeared to be in only mild distress during the examination. The ALJ found that Plaintiff's credibility was undermined by his criminal history, inconsistent reports regarding alcohol and illegal drug use, and continued smoking against medical advice. These findings are sufficiently specific to conclude that the ALJ did not arbitrarily discredit Plaintiff's testimony and did not err in his credibility determination.

**D.     Substantial Evidence Supports the ALJ's Determination that Plaintiff Does Not Have an Impairment or Combination of Impairments that Meet or Medically Equal the Severity of a Listed Impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.**

During the December 19, 2013 hearing before the ALJ, counsel for Plaintiff stated that Plaintiff's theory of the case was that Plaintiff's lumbar spine impairment meets or at least equals Listing 1.04A. Nevertheless, the ALJ considered whether the medical evidence of record supported finding that Plaintiff's back impairment met or equaled the criteria in Listing 1.03, 1.04, 1.05, or any of the other musculoskeletal listings in 1.00, and found it did not. In Plaintiff's request for review of the hearing decision, Plaintiff's counsel contended that the ALJ erred by failing to adequately consider Listing 1.04A.

Plaintiff bears the burden of proof at step three. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). To meet the requirements of a listing, a claimant must have a medically determinable impairment that satisfies all of the criteria in the listing. 20 C.F.R. § 416.925(d). Listing 1.04A requires a disorder of the spine, such as degenerative disc disease, resulting in the compromise of a nerve root or the spinal cord, with evidence of "nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." On appeal, Plaintiff does not contend that he has a medically determinable impairment that satisfies all of the criteria in Listing 1.04A. Rather, Plaintiff contends that Listing 1.03 is the appropriate listing to consider because of Plaintiff's failed spinal fusion.

Listing 1.03 requires: "Reconstructive surgery or surgical arthrodesis [fusion] of a major weight-bearing joint, with inability to ambulate effectively, as defined in 1.00B2b, and return to effective ambulation did not occur, or is not expected to occur, within 12 months of onset." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. Listing 1.00F states: "Major joints refers to the major peripheral joints, which are the hip, knee, shoulder, elbow,

wrist-hand, and ankle-foot, as opposed to other peripheral joints (e.g., the joints of the hand or forefoot) or axial joints (i.e., the joints of the spine)." "Inability to ambulate effectively, as defined in 1.00B2b," means:

> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Plaintiff asserts that his impairment satisfies Listing 1.03 because he had lumbar fusion surgery and uses a cane. Plaintiff's back surgery does not constitute reconstructive surgery of a major weight-bearing joint as defined by Listing 1.00F. Even if Listing 1.03 does not incorporate 1.00F, Plaintiff has not shown he is unable to ambulate effectively. Dr. Werrell observed that Plaintiff "maneuvers well through the examination facility with a mildly antalgic gait pattern" and "uses a cane for pain and greater for balance." Dr. Werrell opined that Plaintiff's ability to stand and/or walk is limited to 4 hours in an 8-hour day because of "lumbar arthropathy, sciatica, use of a cane." Dr. Werrell opined that use of a cane was medically necessary, but noted it had not been prescribed. Plaintiff travels without companion assistance and uses only one cane. Therefore, Plaintiff's back impairment does not meet or equal Listing 1.03. The ALJ's severity determination at step three is supported by substantial evidence.

/ / /

/ / /

/ / /

IT IS THEREFORE ORDERED that the final decision of the Commissioner of Social Security is affirmed. The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 22nd day of July, 2016.

                                    Neil V. Wake
                         Senior United States District Judge